### JOHNSTON, et al v. GENERAL MOTORS CORPORATION, et al.
No. 74-2758 CA (L) 01 G.

Circuit Court, Palm Beach County.

March 30 and April 6, 1977.

Fred A. Hazouri of Cone, Owen, Wagner, Nugent, Johnson & McKeown, West Palm Beach, for the plaintiffs.

L. Martin Flanagan of Jones, Paine & Foster, West Palm Beach, for the defendants.

LEWIS KAPNER, Circuit Judge.

*Order, March 30, 1977:* Trady Johnston, Jr. was involved in an automobile accident in which he was killed. Immediately following the accident the Florida Highway Patrol conducted two separate investigations, one being an accident investigation to determine the cause of the accident and the other being a homicide investigation to determine the cause of death. During the course of the homicide investigation the trooper obtained a blood sample, and a blood alcohol test revealed a blood alcohol level of .35.

Plaintiff now seeks to supress this report, claiming it to be privileged under Florida Statute 316.066 (formerly Florida Statute 317.171) and citing Turnage v. State of Florida, Department of Transportation, 282 S.2d 344 (Fla. 1st DCA 1973) in support thereof. Plaintiff claims that the homicide investigation is no more than an accident investigation because the deceased was in no way a suspect for a possible charge of homicide.

Despite the compelling similarity of *Turnage* to the facts in this case, the court finds that the homicide investigation in this case was in fact for a purpose separate and apart from the accident investigation and, therefore, the results of the test are admissible.

The evidence establishes that the Florida Highway Patrol routinely investigates every accident and routinely investigates every homicide. The purpose of the homicide investigation is not limited, to cases where there is an apparent illegal homicide. The purpose is to initially determine, in every case, whether death was a result of accident, murder or suicide. Unless such investigations are routine rather than ad hoc, it is unlikely that sufficient information to determine the cause of death would be obtained where the real cause of death appears to be something different from what it is. For example, while in this case the apparent cause of death was accidental, until a proper investigation was conducted, including a routine blood alcohol test of the deceased, neither suicide nor murder could be completely ruled out.

There was, to be sure, overlapping fact-gathering between the two investigations, but no evidence has been presented to establish that the homicide investigation was merely a subterfuge to get around the privilege statute. Each investigation is done separately for distinct purposes and the fact that one overlaps the other is not sufficient to justify suppression of the results.

Accordingly, it is found and adjudged that the results of the blood alcohol test are not privileged and shall be admissible in evidence.

There is another, more compelling, reason for receiving the test in evidence.

This test was taken under the auspices of the Palm Beach County Medical Examiner as well as that of the Florida Highway Patrol. Under Florida law the Medical Examiner is required to determine the cause of death in virtually every death occurring in this county. He has both the right and the duty to take whatever tests he deems necessary in the public interest. Specifically, Rule 10D-67.07(4) of the State of Florida, Department of Health and Rehabilitative Services provides —

> "Whenever possible, blood alcohol concentrations shall be determined on all violent deaths (including motor vehicle crashes) of individuals who are over fifteen years of age and those who die within four hours following such injury."

See also Florida Statutes 406.11, 406.14 and Rule 10D-67.02 of the State of Florida, Department of Health and Rehabilitative Services.

Plaintiff contends that because these tests were taken at the request of the Florida Highway Patrol, they were not, therefore, taken under the authority of the Medical Examiner but under the authority of the Florida Highway Patrol. This contention is without merit. Cooperation between agencies is not tantamount to one agency being subordinate to another.

Accordingly, it is found and adjudged that the results of the blood alcohol test may be admitted into evidence regardless of the possible applicability of any privilege under Florida Statute 316.066.

*Order, April 6, 1977:* This matter is presented upon a motion to stay proceedings and to continue this trial until the appellate court has had an opportunity to rule on plaintiff's petition for writ of common law certiorari of this court's order denying plaintiff's motion in limine.

The order in question is one which will permit the introduction in evidence of the results of a blood alcohol test taken by the Florida Highway Patrol in connection with its homicide investigation and by the County Medical Examiner pursuant to his duties under the law. Plaintiff contends that this test was taken as part of the Florida Highway Patrol's accident investigation and is, therefore, privileged under Section 316.066 Florida Statutes.

The granting of a writ of common law certiorari is discretionary with the appellate court. It ordinarily will not be granted in cases involving evidentiary questions because of the difficulty in presupposing the manner in which the evidence will be admitted and

whether, even if admitted in error, the error would be so harmful as to dictate a reversal. Pic and Pic v. Hoyt Development Co., Inc., 309 S.2d 586 (2 DCA 1975). The court in the Pic case went on to say —

> [C]ommon law certiorari is a discretionary writ which will only be issued to review an interlocutory order at law where there is a clear showing that there has been a departure from the essential requirements of the law which will cause material injury to the petitioner throughout the remainder of the proceedings for which the remedy by appeal would be inadequate.

Similarly, Girten v. Bouvier, 155 S.2d 745 (2 DCA 1963), in denying the writ, expressed the view that certiorari will be granted only where the alleged error is fundamental and is of such a substantial nature as would be calculated to cause material injury to the petitioner. In his dissent in this case Judge Shannon referred to the possibility that a court may grant a writ of certiorari in special cases. He stated as follows —

> [T]he Supreme Court has occasionally recognized that in exceptional cases certiorari may lie to review interlocutory or preliminary orders in law cases . . . [T]he Supreme Court has said that it extended what may be termed "special dispensation." The rule of the cases has been broadly stated as follows: If a preliminary or interlocutory order in a law case is made in statutory proceedings incidental to the case which do not conform to the essential requirements of the law, and if such an order may reasonably cause serious injury to the complaining party throughout all subsequent proceedings, in violation of his civil rights, and the law affords no other adequate remedy, certiorari lies for a review of the order.

The Fourth District Court of Appeal has taken a strict view with respect to granting these writs. Siegal v. Abramowitz, 309 S.2d 234 (4 DCA 1975) held that while arguments of expediency are compelling certiorari would not be granted simply because of the possible unnecessary expense of going through two trials. Siegal involved a trial court's pre-trial order precluding the introduction of any evidence relative to the valuation of the property in issue. See also Solitron Devices, Inc. v. Reiland, (4 DCA 1975). Recently, Judge Downey of the Fourth District Court of Appeal apparently has receded somewhat from the strict view he expressed in Siegal, supra and Solitron, supra. The case of Price v. School Board of Broward County, Florida ........S. 2d ........ (4 DCA, Feb. 18, 1977) Case No. 76-163 involved a law suit by a student against the school board for negligence. The trial court, upon the authority of Section 230.23(9)(e)(2) Fla. Stat. severed the insurance company as a party defendant and prohibited any mention of insurance during the trial. Plaintiffs originally filed a petition for writ of common law certiorari which was denied. On remand the case

was tried, plaintiffs failed to prevail, and they appealed, citing as sole error the trial court's ruling regarding the insurance company.

On appeal the appellate court reversed the trial court's order and directed a new trial. The appellate court ruled that the statute in question is unconstitutional as an invasion of the Supreme Court's rule making powers. Judge Downey observed that the court "improvidently denied certiorari" originally, and he further commented —

> "[F]rom our present vantage point, we conclude that we should have granted the petition for writ of certiorari and quashed the order severing the insurance company."

See also Spencer v. Beverly, 307 S.2d 461 (4 DCA 1975), cert. den., 314 S. 2d 590, wherein the Fourth District Court of Appeal dismissed a writ of certiorari to an order of this court regarding pre-trial discovery. Judge Downey specially concurred in that decision and apparently based his denial of the writ on the proposition that the trial court's order was correct rather than on the proposition that the writ was an improper remedy.

In the instant case, from an expediency point of view, there is no question that this court's ruling, if erroneous, would be harmful and would require a new trial. This trial is estimated to take five to seven days and will require testimony by several out-of-state expert witnesses. This, in itself, is not sufficient ground to justify the granting of the writ by the *appellate court,* but it is a factor that *this* court should consider in determining whether this case, should be continued pending the appellate court's decision, assuming that there is a reasonable possibility that the appellate court might grant the writ and either affirm or reverse this court's ruling.

With respect to the nature of this court's ruling regarding the admissibility of the evidence, it is this court's view that the issue ruled upon was the factual question of whether the blood alcohol test was taken pursuant to an accident report privileged pursuant to Section 316.066, Fla. Stat., or whether it was taken under the auspices of either the Medical Examiner or as part of the homicide investigation, both of which instances would take it out of the privilege. This court found that the test was not part of the accident report and ruled that it was, therefore, admissible.

Plaintiff contends that since the test results were included in the accident report it is immaterial that they were obtained by the trooper conducting the homicide investigation and since the tests were requested of the Medical Examiner by this same trooper, it is immaterial that the examiner rather than the trooper conducted the test.

If plaintiffs' view is adopted by the appellate court, that court may determine that this court departed from the essenial requirements of Section 316.066, Fla. Stat., in that it was a fundamental departure from the law and that it would materially injure the plaintiff. The appellate court might also conclude that this is a case that calls for "special dispensation." Therefore, there is a reasonable possibility that the appellate court might rule on this issue.

It is not within the proper province of this court to determine whether the appellate court should or would grant the writ of certiorari. It is, however, proper for this court to consider the fact that the appellate court *might* grant the writ and weigh that fact and the burden of appeal to all concerned against the anticipated burden upon all concerned of going ahead with the trial and, further, to consider the prejudicial effect that continuing the case would have upon the defendant.

Taking all these factors into consideration, it is found and adjudged that the plaintiff's motion for continuance is granted and this case shall be re-scheduled on a priority basis for the jury docket week beginning November 1, 1977. The uniform pre-trial procedures shall be followed except that the pre-trial stipulation, which will be filed by the parties, may incorporate by reference all matters previously dealt with.